ROBERT W. JORG, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 502–69 SC.   Filed May 19, 1969.

Robert W. Jorg, pro se.
*Gary R. DeFrang*, for the respondent.

OPINION

The facts we have set forth show that well over one-half of Robert Roy's support for the year 1966 was paid from petitioner's earnings. Only a small amount of support for Robert Roy was paid from Jeri's earnings either before or after September 1, 1966. However, the record is reasonably clear that after September 1, 1966, Jeri did pay from her current earnings some small items of support for Robert Roy.

Respondent does not argue to the contrary of the conclusion we have set forth in the immediately preceding paragraph as to the source of the funds used for Robert Roy's support in 1966. Respondent's position is that all earnings of petitioner and of Jeri for the period from January 1 to September 1, 1966, were community property, *Poe*

v. *Seaborn*, 282 U.S. 101 (1930), and that any payments made from such funds for community obligations were as a matter of law made one-half by petitioner and one-half by Jeri. Section 26.16.205 of the Revised Code of Washington specifically provides that charges for support of their children are chargeable upon the property of both husband and wife or either. See also *State* v. *Miller*, 32 Wash. 2d 149, 201 P. 2d 136 (1948), in which it was held that a spouse's vacation expenses and money spent for the children are community expenses. Therefore, payments by either petitioner or Jeri from community funds for child support would be for a community purpose. It is therefore respondent's position that as of September 1, 1966, Robert Roy's support had as a matter of Washington community property law been paid equally by petitioner and Jeri.[1] This contention is in accordance with the law of the State of Washington. *State* v. *Miller, supra.* Respondent contends that after September 1, 1966, petitioner's earnings remained community property but Jeri's earnings were her separate property. Since the record shows that all the support paid by petitioner for Robert Roy after September 1, 1966, was paid from his earnings,[2] respondent contends that half of the amount so paid should be considered to have been paid by Jeri. The law of the State of Washington is that absent an agreement as to the husband's wages, those wages do not cease to be community property upon separation from his wife but before divorce. See *Kerr* v. *Cochran*, 65 Wash. 2d 211, 396 P. 2d 642 (1964), and *Hokenson* v. *Hokenson*, 23 Wash. 908, 162 P. 2d 592 (1945).

---

[1] It might be noted that since 1922 respondent has had outstanding a ruling to this effect, I.T. 1275, I–1 C.B. 201, which he reaffirmed in Rev. Rul. 61–52, 1961–1 C.B. 23. Respondent's I.T. 1275 is obviously a rule of convenience and is contrary to a strict interpretation of the law respecting dependency credit unless the parties have entered into a multiple-support agreement for which there was no statutory provision in 1922. I.T. 1275 involves a husband and wife who had no income except earnings which were community income. Their children were supported from their community funds. The husband and wife planned to file separate income tax returns each reporting one-half of the community income. They inquired of respondent which of them was entitled to the credit for the dependent children. Respondent concluded that "the husband and wife contribute equally for the support of the * * * dependents," and then ruled that the "credit for dependents provided by section 216(d) of the Revenue Act of 1921 may be claimed by either husband or wife, but it cannot be divided between them."

Sec. 216(d) of the Revenue Act of 1921 allowed a dependency credit for a dependent "receiving his chief support from the taxpayer." Respondent's regulations, art. 304, Regs. 62, state in explanation of the credit for dependents that "a father whose children receive half or more of their support from a trust fund or other separate source is not entitled to the credit." Respondent in his regulations, therefore, interpreted "chief" to mean "over one-half" but his ruling in I.T. 1275 does not conform to this interpretation.

[2] The record shows that petitioner borrowed some money in late November 1966 but fails to show that any of Robert Roy's expenses were paid from these borrowings. We therefore are not faced with deciding whether these borrowed funds should be considered community funds. Our survey of the law of the State of Washington indicates to us that this question, if presented, would be a difficult one.

There is no evidence in this case of any agreement between petitioner and Jeri as to his wages or as to their community property.

We had an issue with respect to whether under California law prior to 1951, one-half of a husband's wages earned after separating from his wife was properly taxable to his wife. The situation was quite similar to that in the instant case except the wife had moved from California to a noncommunity property State. In that case, after separation the husband, under court order, paid the wife $740 a year for support of herself and their child. In a court-reviewed opinion we held that one-half of the husband's wages was includable in the wife's income as her community property share thereof. *Marjorie Hunt*, 22 T.C. 228 (1954). We held that the taxpayer's wife improperly reported the $740 she actually received from her husband in the year involved since this amount was not paid to her by the husband from his separate income but was paid to her by the husband as manager of the community dispensing funds to her from income which by law was one-half hers.

Respondent's counsel stated that it was because of respondent's acceptance of our decision in *Marjorie Hunt, supra*, that respondent stipulated at the trial that petitioner reported approximately $1,000 too much income on his return. Since petitioner accepted the adjustment by respondent reducing his reported income by approximately $1,000 he also has apparently agreed that he and Jeri had no agreement that his income after separation was not community property and that his income after their separation was community property.

The law of Washington with respect to a husband's wages earned after separation is now and was during the year 1966 substantially the same as the California law with respect to a husband's wages in 1948, the year involved in *Marjorie Hunt, supra*.

We therefore agree with respondent that payments for Robert Roy's support made from petitioner's earnings after September 1, 1966, and during the remainder of that year were payments from community funds.

Section 26.16.140 of the Revised Code of Washington provides that upon separation a wife's earnings become her separate property. Since Jeri made some payment toward Robert Roy's support after September 1, 1966, from her earnings which were her separate property, she has contributed over one-half of Robert Roy's support for the year 1966 if respondent is correct that payments of community obligations from community funds are considered to be made one-half by each the husband and wife.

In *Mellie Esperson Stewart*, 35 B.T.A. 406, 411 (1937), aff. 95 F. 2d 821 (C.A. 5, 1938), we specifically held that the "gross income of the

community shall be taxed equally between the two spouses and each granted the benefit of one-half of the deductions." In *Ernest W. Clemens*, 8 T.C. 121 (1947), we held that medical expenses for a family which were community expenses and which were paid from community funds were to be considered as paid one-half by each spouse relying on *Mellie Esperson Stewart, supra.*

In *Robert A. Sharon*, 10 T.C. 1177 (1948), decision vacated and remanded, in accordance with stipulation of the parties, by the Fifth Circuit on September 29, 1949, we held the deduction allowed by section 23(u), I.R.C. 1939, for alimony payments to a prior wife which amounts were collectible from community property properly to be divided between a husband and wife filing separate returns on a community property basis. In *Raoul Walsh*, 21 T.C. 1063, 1072 (1954), we followed our decision in *Robert A. Sharon*, specifically relying thereon.

We conclude in accordance with our numerous prior decisions that where community expenses are paid by community funds the expenses are equally divisible between the husband and wife.

We therefore conclude that petitioner is not entitled to a dependency exemption for Robert Roy since he did not as a matter of law pay over one-half of his support for the year 1966.

The issue with respect to whether petitioner is entitled to a deduction for a theft loss in 1966 is purely factual. Petitioner has shown that in February 1966 he discovered that property of a fair market value in excess of $565 was missing from his prior home. The basis to petitioner of this property was at least $565. This property was personal property of petitioner and not business property. Therefore, the only basis on which petitioner can show that he is entitled to a deduction for the loss of this property is to show that the loss comes under section 165(c)(3), I.R.C. 1954, as a loss of property from theft. Even if petitioner shows the loss to be from theft, he is entitled under section 165(c)(3) to deduct only $465 of the loss since theft losses of personal property are deductible only to the extent the loss exceeds $100.

Upon weighing all the evidence in this case we conclude that petitioner has shown his loss to be from theft. A window was pushed in indicating an unlawful entry into his house. There were juveniles in the neighborhood who had previously been believed to have entered unoccupied houses and to have taken property therefrom.

Although the record does not specifically so show, the fair inference from the record is that petitioner had no insurance on the property and no means of being compensated for the property unless the property could be recovered from the persons who had taken it. From all the evidence in the record we conclude that when petitioner discovered the theft there was no reasonable basis to believe that he could recover any of the property which had been taken or in any way receive com-

pensation for that property. We therefore hold that petitioner is entitled to a deduction for a theft loss for the year 1966 in the amount of $465.

*Decision will be entered under Rule 50.*